**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTON PEREVOZNIKOV, | ) |
| *Plaintiff,* | ) |
| | ) Case No.: 3:25-cv-00273 (AWT) |
| vs. | ) |
| JEREMY NASH, FORMER ACTING WARDEN OF FCI DANBURY and DR. JOHN DOE. | ) |
| | ) |
| *Defendants.* | |

## SECOND AMENDED COMPLAINT

Plaintiff Anton Perevoznikov ("Plaintiff" or "Perevoznikov") hereby brings this Second Amended Complaint against the Defendants Jeremy Nash and Dr. John Doe (collectively, "Defendants"), in their personal capacities, for the relief sought herein and states as follows:

### Parties

1. Plaintiff Anton Perevoznikov is an individual currently incarcerated at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. Prior to his incarceration in Rhode Island, Perevoznikov was incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury").

2. Defendant Jeremy Nash was, at all times relevant, the Acting Warden of FCI Danbury.

3. Defendant Dr. John Doe was, at all times relevant, a doctor treating inmates at FCI Danbury. Upon information and belief, his name is phonetically spelled: Dr. Lapot. Discovery is needed to identify the exact name of John Doe among other things.

### Introduction

4. Plaintiff, an individual incarcerated in the United States, brings this action for damages due to Defendants' deliberate indifference to his serious medical condition. Plaintiff suffered excruciating pain in his right shoulder for over one and one-half years until he received the

surgery he needed.  During his time at FCI Danbury, Plaintiff never received physical therapy, neither before nor after his shoulder surgery, despite having been placed in orthopedic chronic care at the Metropolitan Detention Center in Brooklyn, New York before his transfer to Danbury.  Plaintiff's repeated complaints concerning his shoulder pain were deliberately ignored by the Defendants.  The Defendants' indifference caused Plaintiff prolonged pain and suffering before his surgery and increased pain and suffering caused by a lack of post-operation physical therapy.  Plaintiff seeks compensatory damages for his pain and suffering and punitive damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## Jurisdiction

5. This action is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## Background Facts

6. The Plaintiff suffered an injury to his right shoulder prior to his incarceration in the Federal Bureau of Prisons.

7. In October of 2020 and prior to his incarceration, Plaintiff was receiving medical treatment for his injury at the Physical Therapy Rehabilitation Institute in Brooklyn, New York.  The Physical Therapy Research Institute diagnosed Plaintiff with tenosynovitis, inflammation of the tissue surrounding his shoulder.  The Plaintiff was prescribed an intensive physiotherapy course where he was to receive physical therapy three times a week.

8.  On October 19, 2020, the Plaintiff was arrested and became incarcerated and was sent to the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn") to be housed pre-trial.

9.  The Plaintiff had not completed his physiotherapy treatment at the time he was arrested.

10. During Plaintiff's initial intake process at MDC Brooklyn, the Plaintiff informed MDC Brooklyn staff that he was undergoing an intensive course of physical therapy for his right-shoulder injury.

11. After months of alerting MDC Brooklyn staff to the fact that he was experiencing excruciating pain in his right shoulder, the Plaintiff was called to see a doctor who prescribed him with Naproxen 500mg.

12. Plaintiff went to Brooklyn Hospital on two occasions. On the first visit, the doctor at the hospital prescribed the Plaintiff with physical therapy to be provided during his incarceration.  Six weeks after his first visit, Plaintiff was brought back to Brooklyn Hospital for a follow-up with the doctor.  The doctor was surprised to hear that Plaintiff had not yet received physical therapy.

13. The Plaintiff informed MDC Brooklyn staff that the Naproxen was wholly ineffective, and Plaintiff was eventually given a Cortisone steroid shot to help relieve his shoulder pain.

14. MDC Brooklyn scheduled Plaintiff an appointment to meet with an orthopedic surgeon.

<u>**Specific Facts Relevant to this Complaint**</u>

15. In January of 2023, Plaintiff was transferred to FCI Danbury.

16. During the intake process at FCI Danbury, Plaintiff informed FCI Danbury that he had been taking medication for a shoulder injury.

17. Later in January 2023, Plaintiff went for a sick call at FCI Danbury due to his severe shoulder pain.

18. Medical staff at FCI Danbury gave Naproxen to Plaintiff, despite Plaintiff stating that it was not effective to treat his pain.

19. Plaintiff requested a Cortisone shot but was denied by Dr. John Doe.  Dr. John Doe stated that he could not have a second Cortisone shot until at least six months had passed since his first one, which had been administered while he was at MDC Brooklyn.

20. On January 20, 2023, as Plaintiff's pain remained at a high level, Plaintiff filed a Regional Administrative Remedy Appeal stating that he was being denied much needed care, including physical therapy, and requesting urgent attention.

21. On February 27, 2023, Plaintiff received a letter from Defendant Jeremey Nash, former Acting Warden of FCI Danbury, informing him: "A review of your record indicates that you were removed from orthopedic chronic care on January 18, 2023, when you reported no concerns and not taking any medications."

22. This is despite the fact that Plaintiff was continuously requesting physical therapy and pain treatment care, and alerting FCI Danbury staff of the excruciating pain he was experiencing in his right shoulder.

23. On March 21, 2023, Plaintiff filed a Central Office Administrative Remedy Appeal which stated that he had been requesting medical attention regarding his right shoulder continuously since he was incarcerated and had not received adequate care.

24. Eventually, Plaintiff was sent to see Dr. Escobar who administered to Plaintiff Cortisone injections repeatedly over the span of months.

25. The Cortisone injections provided much needed relief for the excruciating pain that Plaintiff had unnecessarily endured for a long period of time.

26. The administration of the cortisone injections made it clear that Dr. John Doe's refusal to administer Cortisone injections was not reasonable, violated the standard of care, and caused Plaintiff to endure excruciating pain unnecessarily.

27. On one occasion when Plaintiff was being examined by Dr. Escobar, Dr. Escobar reviewed Plaintiff's medical file and revealed to the Plaintiff that someone "messed up" by removing Plaintiff from orthopedic chronic care.

28. Dr. Escobar stated that his medical file should have been transferred from New York to Connecticut, but was not.

29. Plaintiff asked Dr. Escobar if he would need to wait longer for further treatment due to this "mess up," which Dr. Escobar and his staff affirmed.

30. Unfortunately, after some time, the effectiveness of the Cortisone shots administered by Dr. Escobar began to decline, the severe pain returned, and Plaintiff had to wait again for proper medical care.

31. After continuous complaints about the pain in his shoulder, in November of 2023, Plaintiff was visited by Dr. Edmund Ganal who told the Plaintiff he would schedule an MRI for Plaintiff's shoulder.

32. The MRI revealed that the Plaintiff needed surgery on his right shoulder.

33. One and one-half years after arriving to FCI Danbury, and after many requests for medical treatment, including excruciating pain and requests for physical therapy, on June 10, 2024, the Plaintiff finally underwent shoulder surgery.

34. Plaintiff was immediately returned to his unit at FCI Danbury following his surgery and was not given adequate pain medication for an entire day following the surgery.

35. Plaintiff never received post-surgery physical therapy, despite multiple requests.

36. Defendants Nash and John Doe were deliberately indifferent to Plaintiff's repeated requests for medical attention.  Plaintiff's complaints were not adequately addressed for one and one-half years until he finally underwent his badly needed surgery, which was performed by Dr. Ganal.  Post-surgery, the Plaintiff's pain was once again ignored, and he received no post-operation physical therapy.

37. Plaintiff is still experiencing shoulder pain and is still in need of proper post-surgery medical attention.

**COUNT ONE: *Bivens* Action for Violation of Plaintiff's Eighth Amendment Rights (as to all Defendants)**

38. Paragraphs 1 through 37 are incorporated as if fully set forth herein.

39. Plaintiff has experienced increased pain and suffering due to Defendants' deliberate indifference to his serious medical condition.

40. The Eighth Amendment guarantees prisoners medical treatment for serious medical needs.

41. By the actions or inactions, as descried above, including the failure to abide by the standard of care and indifference to his medical needs, Defendants violated Plaintiff's rights under the Eighth Amendment.

WHEREFORE, Plaintiff Anton Perevoznikov requests the following:

1. Compensatory damages for pain and suffering;

2.  Punitive damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and

3.  Such other relief as the Court deems just and proper.

Dated: Bridgeport, Connecticut
      April 28, 2025                        Respectfully submitted,

By:     */s/ Monte E. Frank*
          Monte E. Frank (ct13666)
          Portia Baudisch (ct31864))
          Pullman & Comley, LLC
          850 Main Street
          Bridgeport, CT 06601-7006
          Telephone (203) 330-2000
          Facsimile (203) 576-8888
          mfrank@pullcom.com
          pbaudisch@pullcom.com

ACTIVE/11.272/PBAUDISCH/20305609v1